IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

GENEVA MAYNARD, as Administratrix
of the Estate of CHRISTOPHER RATLIFF, deceased.,

          Plaintiff,

v.                                      CIVIL ACTION NO. 3:09-0101

THE CITY OF HUNTINGTON and
JOHN DOE OFFICERS of the City of
Huntington Police Department,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

This is a civil rights case in which the plaintiff, Geneva Maynard, as Administratrix of the Estate of Christopher Ratliff, alleges the use of excessive force by unnamed officers in the Huntington Police Department; the wrongful death of her son, Christopher Ratliff; and negligence on the part of the City of Huntington in the training and supervision of its police officers and its establishment of polices, procedures and practices regarding arrests. Pending before the Court is Defendants City of Huntington and John Doe Officers of the City of Huntington Police Department's Motion for Summary Judgment (Doc. 38). For the reasons stated below, the motion is **GRANTED**.

**Procedural History**

Plaintiff's Complaint, which was filed on November 20, 2008, in the Circuit Court of Cabell County, West Virginia, alleges as follows:

    1.    To the best of Plaintiff's knowledge, on or about July 11, 2008, the Decedent was a passenger in a 2008 Chevrolet Trail Blazer. The vehicle was traveling in the 3100

>    Block of 5th Avenue in Huntington, Cabell County, West Virginia.
>
> 2. On the date aforesaid at approximately 4:00, John Doe Officers stopped the 2008 Chevrolet Trail Blazer in which the Decedent was a passenger.
>
> 3. At the time of the stop, several officers then went to each side of the vehicle with their weapons drawn. One of the officers told Jennifer Moore[1], a passenger in the vehicle, to not move. One of the officers then opened the door on the Decedent's side of the vehicle and struck the Decedent in the head with his weapon. At no time had the Decedent made any threatening move, attempt to defend himself or otherwise act in an aggressive manner. The Decedent was also not armed.
>
> 4. The officer who struck the Decedent in the head with the gun then pulled the presumably unconscious Decedent from the vehicle and he and another officer continued to beat him. As a result of the beating, the Decedent lost consciousness and died at the scene.
>
> 5. A the time of this occurrence, there were three (3) to four (4) other officers present. None of the remaining officers on the scene took any action to stop the two (2) officers from beating the decedent to death.
>
> 6. After beating the Decedent unconscious, Cabell County EMS came to the scene and transported the Decedent to St. Mary's Medical Center where he was pronounced dead.

*Pl.'s Compl.* (Doc. 1), 3-4, ¶¶ 1-6. Plaintiff's Complaint states that she is suing the John Doe Officers, in their official capacities, and the City of Huntington for its failure to properly train or supervise its police officers and for its establishment of improper policies, procedures and practices with regard to arrests. Plaintiff seeks compensatory and punitive damages in an unspecified amount and reasonable expenses, including attorney and expert fees.

On February 5, 2009, the defendants removed the action to this Court. At that time, and when the plaintiff filed this action in the Circuit Court of Cabell County, she was represented by counsel, Paul E. Biser. On August 19, 2009, however, Attorney Biser filed a Motion to Withdraw

---

[1] Ms. Moore is also referred to at various points in this Memorandum Opinion and Order as Jennifer Smallwood or Ms. Smallwood.

as Counsel on behalf of Geneva Maynard and Christopher Ratliff, citing an impasse regarding the prosecution of the case and an inability to meet the plaintiff's expectations (Doc. 17). By Order entered September 9, 2009, the Court informed Plaintiff of the motion to withdraw and granted her until September 21, 2009, to respond in writing to said motion (Doc. 21). Then, on September 17, 2009, the Court entered a second Order concerning the motion, which set a hearing for argument on September 28, 2009, and directed the plaintiff to appear at such hearing in person (Doc. 23). Plaintiff failed to appear at the September 28, 2009, hearing or to otherwise object to the motion to withdraw. As a result, the Court granted Attorney Biser's motion to withdraw on September 28, 2009 (Doc. 25).

In its Order granting Attorney Biser's withdrawal, the Court stayed this action until October 28, 2009, to allow the plaintiff time to (1) obtain new counsel, (2) proceed pro se, or (3) request voluntary dismissal. On October 16, 2009, in a letter-form motion, the plaintiff requested additional time to find new counsel (Doc. 26). The Court granted the plaintiff's motion and extended the then-existing stay in the case accordingly (Doc. 27). On November 5, 2009, the plaintiff filed another letter-form motion requesting to proceed pro se (Doc. 28), which the Court granted that same day. In its Order, the Court cautioned the plaintiff that, as a pro se plaintiff, she would be responsible for and required to comply with the Local Rules of Procedure for the United States District Court for the Southern District of West Virginia and the Federal Rules of Civil Procedure any time she filed papers with or appeared before the Court (Doc. 29). Also in its Order, the Court informed the plaintiff that all existing Orders filed in the case remained in effect, including the April 6, 2009, Scheduling Order. *Id.* Finally, the Court directed the Clerk to provide a copy of this scheduling order to the plaintiff. *Id.*

On December 4, 2009, the defendants filed the instant motion for summary judgment (Doc. 38). The motion was accompanied by several exhibits (Doc. 38-1 through Doc. 38-3)[2] and a memorandum of law (Doc.39). On December 8, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was notified of her right and obligation to respond to the defendants' motion and deadlines were set for a response and reply (Doc. 41).

On December 9, 2009, the plaintiff filed a motion to continue the case and for additional relief (Doc. 42). Then, on December 14, 2009, she filed several "exhibits in support of her complaint" (Doc. 43 through Doc. 43-5).[3] On December 15, 2009, the Court denied the plaintiff's motion to continue the case (Doc. 44). However, in light of the motion to continue, and construing the filing of the above-mentioned exhibits as an attempt to comply with its *Roseboro* Notice, on December 16, 2009, the Court granted the plaintiff additional time to respond to the pending motion

---

[2]These exhibits include: (1) an affidavit and attached memorandum describing the July 11, 2008, events by Sargent Darrell Booth, Commander of the Huntington Police Department (Doc. 38-1); (2) the West Virginia Chief Medical Examiner's Report of Death Investigation and Post Mortem Examination Findings and attached Toxicology Report dated December 15, 2008, and August 22, 2008, respectively (Doc. 38-2); and (3) the letter to Geneva Maynard from William L. Manion, M.D., PhD., providing expert opinion on the cause of Christopher Ratliff's death and dated November 20, 2009 (Doc. 38-3).

[3]These exhibits include: (1) a list of cases in which Dr. William Manion has given testimony dated December 2, 2009 (Doc. 43); (2) the West Virginia Department of Health & Human Resources Bureau for Public Health's Medical Examiner's Certificate of Death for Christopher Ratliff dated July 7, 2008 (Doc. 43-1); (3) an unsworn, handwritten description of the July 11, 2008, events, written and signed by Jennifer Smallwood on August 3, 2008 (Doc. 43-2); (4) what appear to be doctor's notes taken on an anatomical diagram of the human body and attached form, dated July 12, 2008 and identified as related to Christopher Ratliff (Doc. 43-3); (5) the letter to Geneva Maynard from William L. Manion, M.D., PhD., providing expert opinion on the cause of Christopher Ratliff's death and dated November 20, 2009 (Doc. 43-4); and (6) the West Virginia Chief Medical Examiner's Report of Death Investigation and Post Mortem Examination Findings and attached Toxicology Report dated December 15, 2008, and August 22, 2008, respectively (Doc. 43-5).

for summary judgment (Doc. 45). The plaintiff was given until January 4, 2010, a full month after the defendants filed their motion, to file a response. In its Order granting the extension, the Court repeated the *Roseboro* Notice and again informed the plaintiff of her right and obligation to respond to the defendants' motion for summary judgment (Doc. 45).

The plaintiff did not file a written response to the defendants' motion. Nonetheless, in an abundance of caution, the Court scheduled a hearing on the pending motion for summary judgment to be held at the pretrial conference on February 16, 2010. Prior to this hearing, the Court issued a final *Roseboro* Notice on February 2, 2010. In that Order, the Court (1) informed the parties that it would hear argument on the defendants' motion for summary judgment at the pretrial conference on February 16, 2010, and (2) re-informed the plaintiff of her right and obligation to respond to the defendants' motion. Also in the Order, the Court attempted to once again explain to the plaintiff what type(s) of evidence would be admissible at the upcoming hearing.

The hearing was held, as scheduled, on February 16, 2010, and the matter is now ripe for determination.

**Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, the

availability of summary judgment turns on whether a proper jury question exists in a pending case, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970), and summary judgment is properly granted where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248-49.

In considering a motion for summary judgment, the Court draws any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec.Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson*, 477 U.S. at 249. Nonetheless, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor," *Anderson*, 477 U.S. at 256, and, if the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element, then summary judgment will be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The nonmovant must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. A genuine issue of material fact exists only if, in viewing the record and all reasonable inference drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* at 248. Accordingly, the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. *Fed. R. Civ. P. 56(c)*; *Celotex,* 477 U.S. at 322-23.

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts

showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. *Fed. R. Civ. P. 56(e)(2).*

## Analysis

The defendants move for summary judgment on all claims against them: (1) that the unnamed officers used deadly, excessive or otherwise unjustified force against Christopher Ratliff during the attempt to arrest him on July 11, 2008 (Counts 2 & 4); (2) that such force proximately and wrongfully caused Mr. Ratliff's death, causing Geneva Maynard expense, mental anguish, pain, suffering and other damage (Count 3); (3) that the unnamed officers were negligent in creating a risk of physical harm to Mr. Ratliff (Count 5); (4) that the officers' actions were outrageous, intolerable and so extreme as to exceed all bounds of decency (Count 6); and (5) that the City of Huntington negligently supervised and trained the unnamed officers and such negligence created the unreasonable risk of harm to Mr. Ratliff complained of above (Counts 7 & 8). The defendants argue they should be granted summary judgment on all claims, because: (1) the officers in question acted in an objectively reasonable manner during the attempted arrest of Mr. Ratliff; (2) Mr. Ratliff's death was the result of his affirmative decision to swallow a drug bindle, not the result of officer conduct; (3) the unnamed officers in question are entitled to qualified immunity; and (4) the plaintiff has failed to establish a constitutional violation against the City of Huntington.

Several of the claims asserted by the plaintiff are interrelated. Thus, they can be dealt with simultaneously.

### Alleged Use of Excessive Force, Outrageous Conduct and Negligence on the part of the Unnamed Officers

Claims that law enforcement officers used excessive force – deadly or not – when making or attempting to make an arrest should be analyzed under the Fourth Amendment and its "objective

reasonableness" standard. *See, e.g., Graham v. Connor*, 490 U.S. 386, 395 (1989); *Young v. Prince George's County, Maryland;* 355 F.3d 751, 756-57 (4th Cir. 2004); *Elliot v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996). In such cases, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Young,* 355 F.3d at 757. This analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [the suspect was] attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Additionally, "[the] reviewing court ... must make allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." *Elliot,* 99 F.3d at 642 (citing *Graham*, 490 U.S. at 396-97).

The defendants contend that they are entitled to summary judgment because: (1) when taking into consideration the specific facts and circumstances of this case, the force used by the unnamed officers on July 11, 2008, was objectively reasonable, and (2) the evidence shows that asphyxiation, not the force exerted by the unnamed officers engaged in the attempted arrest of Mr. Ratliff, was the cause of his death. The plaintiff, on the other hand, claims that the force used by the Huntington Police Department when attempting to arrest her son on July 11, 2008, was excessive, outrageous and otherwise unlawful and that this force was the proximate cause of her son's death.

In support of their motion, the defendants provide:(1) an affidavit and attached memorandum describing the July 11, 2008, events authored by Sargent Darrell Booth, Commander of the Huntington Police Department (Doc. 38-1); (2) the West Virginia Chief Medical Examiner's Report of Death Investigation and Post Mortem Examination Findings and attached Toxicology Report

8

(Doc. 38-2); (3) the letter to Geneva Maynard from William L. Manion, M.D., PhD., providing expert opinion on the cause of Christopher Ratliff's death (Doc. 38-3); (4) a report by Samuel D. Faulkner, an expert on the proper use of force and other topics related to law enforcement, including the proper procedures for arrest (Doc. 49-1); and (5) a report by Gregory J. Davis, M.D., in which the doctor opines, to a reasonable degree of medical certainty, on the cause of Mr. Ratliff's death (Doc. 49-2).[4] Taken together, these materials properly support the defendants' motion for summary judgment.

First, the affidavit by Sargent Booth, who was at the scene of the attempted arrest on July 11, 2008, attests, in pertinent part:

> I was behind the Blazer and approached the driver's side all the while yelling "police" and "put your hands up." Other officers/agents were approaching the vehicle at the same time also shouting "police" and "get your hands up." Immediately, the driver (MOORE), the driver's side rear passenger (NIDICK), and passenger side rear passenger (HALL) complied and put their hands up to the ceiling of the vehicle. I was unable to see the front passenger's (RATLIFF) hands at all but could clearly see him darting his hands/arms downward while turning his body toward the center and rear of the passenger compartment. I felt certain he was attempting to get a weapon to engage those officers/agents on the passenger side of the vehicle. I pulled open the driver's side rear door and commanded RATLIFF to stop and show his hands. After opening the door and as I was yelling the commands at RATLIFFF, I was able to see that he had turned his body to his left and insinuated it between the front seats and was laterally bent over the console to his left. RATLIFF'S left arm was hooked around the back of his seat up to his armpit and he was holding on with all his strength. With his right hand, he was shoving a handful of, what I believed to be Heroin wrapped in plastic into his mouth. I immediately and loudly yelled that he was "swallowing it" and yelled at RATLIFF to stop. RATLIFF continued frantically stuffing the bag/substance into his mouth. I could see the other officers/agents trying to pull him from the passenger door but they were having a very difficult time. RATLIFF demonstrated a great deal of strength but also had a great position/leverage to prevent the officers/agents from pulling him out. I reached in with my left hand and began pulling RATLIFF'S left arm from its hooked

---

[4] The plaintiff did not file a response to the defendants' motion for summary judgment. As a result, there was no basis for the defendants to file a reply and the defendants submitted the expert reports by Samuel D. Faulkner and Gregory J. Davis, M.D. as attachments to their Proposed Pretrial Order (Doc. 49).

9

> position around the seat-back.  I was having a great deal of difficulty prying his arm from the seat.  Initially, I couldn't do it.  I delivered several distractionary blows to RATLIFF'S shoulder and back area trying to release his arm.  The entire time the other officers/agents and I were trying to free RATLIFF from the vehicle, he continued chewing the bag trying to swallow it.
>
> * * *
>
> As I was securing NIDICK, I watched HALL and saw him reaching his left hand into his left pants pocket.  HALL was the armed robbery/resisting subject.  I yelled at HALL to put his hands back up and he did.  The other officers/agents were still having difficulty getting RATLIFF under control.  He was still fighting them over on the passenger side of the vehicle.  I secured NIDICK and covered HALL until RATLIFF was contained.  That took approximately 90 seconds to 2 minutes.  *See* Doc. 38-1, 1-2.

Second, after considering the information contained in the Booth Affidavit, as well as additional materials relevant to the July 11, 2008, events, including audio statements made by the three other passengers in the Chevrolet Blazer, the defendants' expert Samuel Faulkner concludes:

> 1. It was a violation of West Virginia law by Mr. Ratliff that brought him into contact with the Huntington Officers/Agents in this situation.
>
> 2. The Huntington Officers/Agents efficiently and correctly employed standard arrest tactics in this drug arrest.
>
> 3. The Huntington Officers/Agents responses to Mr. Ratliff's resistive, assaultive and personally harmful actions complied with their training, policies and law enforcement practices.
>
> 4. The Huntington Officers/Agents de-escalated appropriately once Mr. Ratliff was under control.
>
> 5. The follow-up care given to Mr. Ratliff by the Huntington Officers/Agents was in compliance with law enforcement industry guidelines.  *See* Doc. 49-1, 8-9.

Further, in his report, Mr. Faulkner provides several pages explaining the "Basis for [his] Opinions." *Id.* at 9-15.  There, Mr. Faulkner details why, in light of the facts and circumstances of this particular case, each of his conclusions are justified and the force used by the Huntington Officers was

reasonable.[5]

Finally, summary judgment is proper in this case because each of the expert reports and opinions provided by the defendants, including the report supplied to the plaintiff by her medical expert, Dr. Manion, find "to a reasonable degree of medical certainty that Mr. Christopher Lee Ratliff died as a result of asphyxia because of the plastic bag becoming lodged in his throat." *Dr. Manion's Report* (Doc. 38-3), 2; *see also WV Chief Medical Examiner's Report* (Doc. 38-2), 8 ("The cause of death of Christopher Lee Ratliff, a 32 year old man, is attributed to asphyxia as a result of his attempt to swallow drug evidence during police intervention."); *Dr. Davis' Report* (Doc. 49-2) ("[I]t is my opinion that death in this case is due to asphyxia due to airway occlusion as the result of an attempt by decedent to swallow evidence during the course of law enforcement intervention."). Moreover, in each report, the relevant expert acknowledges the injuries Mr. Ratliff sustained during his violent struggle with the police, finding the relationship between these injuries and his death, at best, uncertain. *See WV Chief Medical Examiner's Report* (Doc. 38-2), 8 ("Attempted arrest by police personnel resulted in violent struggle between the decedent and police officers, with associated injuries to the decedent's head and torso which pose uncertain relationship to his death.");

---

[5]For example, Mr Faulkner explains that: "It was known to the Huntington Officers/Agents that there were four individuals in the Blazer that was transporting heroin. Mr. Ratliffe was known to be a drug dealer and Mr. Hall was known to the officers for having committed armed robberies using a handgun, resisting arrest and fleeing from the police. Law enforcement officers are trained that whenever they are dealing with drug dealers they must expect for some or all of the individuals to potentially be armed. Also, many drug dealers, as in the case of Mr. Ratliff, are also drug users which can make them very dangerous and unpredictable to deal with." Further, he notes, in relevant part: "The Huntington Officers who saw Mr. Ratliff's movements initially believed he was potentially reaching for a weapon. Mr. Ratliff's actions at this point placed him in the RED area of the continuum. The Huntington Officers did not react and fire immediately. They held their fire and some quickly moved into a better position to see Mr. Ratliff's hands. Had Mr. Ratliff produced a weapon, this delay could have cost the lives of some officers."

*Dr. Manion's Report* (Doc. 38-3) (same); *Dr. Davis' Report* (Doc. 49-2) ("The contribution, if any, to death by blunt force injuries sustained as the result of the [police struggle] is unclear.").

In conclusion, in light of the reports and opinions submitted by the experts for both parties, and taking into consideration the Booth Affidavit, there is strong evidentiary support for the defendants' motion for summary judgment. As noted, the defendants have provided competent evidence: (1) that Mr. Ratliff resisted arrest and made furtive movements in the course of his attempted arrest which a reasonable police officer could have deemed to be a threat to himself or others; (2) that, under the circumstances, the officers responded to the threat(s) caused by Mr. Ratliff's resistance reasonably, and (3) that there is insufficient evidence to prove a causal relationship between the injuries Mr. Ratliff sustained as a result of his struggle with the police and his death. Accordingly, the burden of proof shifts to the plaintiff and she must now provide competent, concrete evidence to establish a specific genuine issue of material fact for trial, regarding (1) the reasonableness of the officers' use of force and (2) the cause of Christopher Ratliff's death. *See Anderson*, 477 U.S. at 249, 252; *Fed. R. Civ. P. 56(e)(2)*.

To support her claims, the plaintiff provides several "exhibits": (1) the letter from Dr.. Manion providing his expert opinion on the cause of death (Doc. 43-4); (2) a list of cases in which Dr. Manion has given testimony (Doc. 43); (3) the State Medical Examiner's Certificate of Death for Christopher Ratliff (Doc. 43-1); (4) an unsworn, handwritten description of the July 11, 2008, events written and signed by Jennifer Smallwood, a passenger in the Chevrolet Blazer (Doc. 43-2); (5) a physician's notes taken on an anatomical diagram of the human body and identified as Christopher Ratliff (Doc. 43-3); and (6) the State Chief Medical Examiner's Report (Doc. 43-5). These exhibits do not provide a sufficient basis to withstand summary judgment. *See, e.g., Fed. R.*

*Civ. P. 56(e)(2)*; *Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial. ... Based on the Rule ... the plaintiff [can]not defeat a properly supported summary judgment motion of a defendant ... without offering any significant probative evidence tending to support the complaint. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.") (internal citations and quotations omitted).

To begin with, neither the report submitted by Dr. Manion, nor the report provided by the State Chief Medical Examiner establishes a genuine issue of material fact with regard to the cause of death. Instead, these reports explicitly note the cause of death as asphyxiation and, despite outlining the type and severity of the injuries Mr. Ratliff sustained as a result of his struggle with the police, the reports state that the relationship between these injuries and Mr. Ratliff's death is uncertain.[6] Additionally, Ms. Smallwood's unsworn statement does not, alone, establish a triable issue.

Ms. Smallwood was a passenger in the Chevrolet Blazer Mr. Ratliff was traveling in prior

---

[6]The strongest language regarding the potential relationship between Mr. Ratliff's injuries and his cause of death is found in Dr. Manion's letter to the plaintiff. There, the expert states: "The violent struggle with the police exacerbated the potentially lethal situation." *Dr. Manion's Report* (Doc. 38-3), 2. This statement, however, is followed by the conclusion: "In fact, Mr. Christopher Lee Ratliff was unable to swallow the bag of drugs and in fact suffocated from the drugs blocking his airway. It is my opinion to a reasonable degree of medical certainty that the manner of death is accident." *Id.* Read together, these statements reveal that the expert is, at best, able to speculate about the relationship between the injuries Mr. Ratliff sustained during his struggle with the police and his death. Such speculation is not sufficient to overcome a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252 ("[T[he inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. ... The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.").

to his attempted arrest on July 11, 2008. In an unsworn, hand-written statement provided to the Court by the plaintiff, Ms. Smallwood describes her version of the events that immediately preceded Mr. Ratliff's death. The statement is signed and dated August 3, 2008. In her account of the events, Ms. Smallwood states, in pertinent part:

> One man who I later found out was Paul Hunter came through my side of the car. I was in the driver seat and started beating Chris in the back of the head. Another officer came through Chris' side of the car, he was in the passenger seat of the front of the car and he began to beat Chris in the back and the head. It felt like forever and they continued to beat him. They pulled him out of the car and he was already unconscious and he just fell on the ground. He never said a word after they beat him and pulled him out of the car. Once they got me out of the car, cuffed me and put me in a patrol car one of the officers asked me if I had anything stuffed. *Smallwood Statement* (Doc. 43-2), 1.

Later in the same statement, Ms. Smallwood continues:

> On my way to the patrol car I saw the ambulance drivers laughing and talking to each other walking slowly towards Chris lying on the ground. The officers were standing around Chris not doing anything and Chris was blue. I knew that is wasn't good. *Id.* at 2.

Finally, Ms. Smallwood alleges:

> One [officer] came through the passenger side of the vehicle and one came in on the driver's side across me and beat Chris. Chris wasn't moving or fighting back in any way and they continued to beat him. *Id.* at 3.

If taken as true, Ms. Smallwood's statements do not reflect well on the Huntington Police Department. Nonetheless, Ms. Smallwood's statement is insufficient evidence to refute the testimony provided in Sargent Booth's affidavit or the conclusions recited in Mr. Faulkner's report. Ms. Smallwood's statement is not sworn to or otherwise given under the penalty of perjury. As a result, it is insufficient to create a genuine issue of triable fact with regard to whether the officers on the scene of the arrest on July 11, 2008, reasonably responded to an objectively perceived threat created by Mr. Ratliff during the arrest. Therefore, despite the Court's agreement with the plaintiff, as stated at the pretrial conference on February 16, 2010, that some of the injuries sustained by her

son on July 11, 2008, appear to be suspicious, without any competent evidence to support the plaintiff's claims, the Court has no choice but to enter summary judgment in favor of the unnamed officers.[7]

### Plaintiff's Claims that the City of Huntington was Negligent in its Training and Supervision

In her complaint, the plaintiff alleges that the City of Huntington created an unreasonable risk of harm to the Decedent "by failing to adequately supervise, control or otherwise monitor the activities of its employees, defendants, John Doe Officers," and by "failing to adequately train its employees John Doe Officers." *Pl.'s Compl.* (Doc. 1), 8 & 9. However, the plaintiff has not, at any point since the filing of her Complaint, submitted any evidence to the Court regarding these claims. Accordingly, the Court **GRANTS** the City of Huntington summary judgment. *See, e.g., Fed. R. Civ. P. 56(e)(2)*; *Anderson*, 477 U.S. at 256.

---

[7]Because the Court enters judgment in favor of the unnamed officers, it need not address the argument that the Huntington Officers are entitled to qualified immunity.

**Conclusion**

For the foregoing reasons, the Court **GRANTS** the defendants' motion for summary judgment. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 25, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE